**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Case No. 26-18850** |
| | ) | |
| **TYRO CONSTRUCTION INC.** | ) | Chapter 11 |
| | ) | Subchapter V |
| Debtor. | ) | |
| | ) | Hon. Timothy A. Barnes |
| | ) | |

**DECLARATION OF TRACY PERKINS IN SUPPORT OF FIRST DAY MOTIONS**

I, Tracy Perkins, declare under 28 U.S.C. § 1746:

1. I am the President, a director and the sole shareholder of Tyro Construction Inc. (the "Debtor"), the debtor and debtor in possession in this case. I have held those positions since the Debtor was organized in 2016, and I am responsible for its day-to-day operations and finances. I am authorized to make this declaration on the Debtor's behalf.

2. I make this declaration in support of the Debtor's Emergency Motion for Interim and Final Authority to Use Cash Collateral and to Grant Adequate Protection and its Emergency Motion to Authorize Debtor to Maintain Existing Bank Account and to Designate It as Its Debtor in Possession Account (together, the "First Day Motions"). Except as stated otherwise, the facts below are based on my personal knowledge, my review of the Debtor's books and records, or information provided by the Debtor's outside accountant, Alexa CPA Group. If called as a witness, I could testify to them.

**The Chapter 11 Case**

3. On November 11, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V. The Debtor continues to operate its business and manage its property as debtor in possession. Janice Seyedin has been appointed as the Subchapter V trustee.

**The Debtor's Business**

4. The Debtor is an Illinois corporation that works as an asphalt paving and heavy-highway and underground construction subcontractor. Most of its work has been on Illinois Department of Transportation and other public-works projects in the Chicago area, performed under subcontracts with general contractors. It is a union contractor and has been party to one or more collective bargaining agreements.

5. The Debtor's office is at 318 W. Adams Street, Suite 1817, Chicago, Illinois, which it occupies under an arrangement with Expansive. It keeps its equipment at a yard at 3947 S. Union Avenue, Chicago, which it leases from Vision LLC.

6. The Debtor's principal equipment includes a 2010 Caterpillar AP1055 asphalt paver, a 2019 Caterpillar CB24B double-drum compactor, a 2014 Caterpillar 262D skid steer loader, a 1999 Case skid steer, and Caterpillar rollers, with a combined book value of approximately $311,500.

7. The Debtor's business was substantial: its gross revenue was approximately $3.3 million in 2023. It then declined sharply, to approximately

$785,000 in 2024 and approximately $105,000 in 2025, as the Debtor lost work and could not finance new jobs. Several significant factors contributed to Tyro Construction's decision to seek financial restructuring under Subchapter V.

(a) Limited Access to Financing and Capital

As a minority- and woman-owned construction company, Tyro Construction faced substantial challenges obtaining traditional financing throughout its 10 years of operation. Beyond funding received through the Small Business Administration (SBA), the company was unable to secure adequate financial support from conventional lending institutions. As a result, I was forced to personally finance business operations to sustain the company. Additionally, Tyro frequently relied on revenue from one construction contract to fund expenses associated with another, creating ongoing cash-flow challenges and financial instability.

(b) Challenges Obtaining Qualified Union Labor

Tyro Construction also experienced significant difficulties securing an adequate supply of qualified, experienced union laborers and equipment operators. As a smaller subcontractor, Tyro often faced disadvantages in obtaining skilled union workers, particularly when competing against larger, more established construction companies. The laborers and operators made available to Tyro were not always sufficiently trained or experienced to meet the demands of the projects awarded. These workforce challenges affected

productivity, increased operational costs, and placed additional financial pressure on the company.

8. In the fall of 2026, the Debtor resumed work. On October 26, 2026, it invoiced Abbey Construction, Inc. $404,266.67.

Tyro Construction is an active asphalt paving subcontractor that invoices general contractors based on the percentage of work completed. Although its contracts contain Net 30-day payment terms, they also include “pay-when-paid” provisions, which can delay payment to Tyro until the general contractor receives payment from the project owner. These payment arrangements create significant cash-flow challenges, as Tyro must continue funding labor, equipment, materials, and other operating expenses while awaiting payment for work already performed. Currently, Tyro has additional asphalt paving projects that will continue in 2027-2028.

9. The Debtor customarily has in asphalt season 8 to 10 external union employees and 2 to 3 internal staff. At present, there are 6 to 8 union laborers based on project needs. Tyro pays the employees weekly, every Friday, through ADP. Its weekly payroll, including withholding and union fringe contributions, is approximately $25,865 at the current time, but will be reduced to approximately $3,229.50 for several months in late December. The difference is due to the seasonal nature of the work; construction work ends in December and begins again closer to April. Also, the November 20, 2026 payroll amount, i.e., $6,752, is lower

than the other payrolls in November and December, due to a work stoppage that had occurred, which ended on November 10, 2026.

**The Debtor's Assets and Liabilities**

10. As stated in the Debtor's schedules, its assets on the Petition Date had a scheduled value of $643,881.51, consisting principally of accounts receivable of $468,333.70 (including the Abbey Construction invoice), retainage of $11,649.27, an amount of $153,004.16 recorded on the Debtor's books as due from me, and nominal bank balances. The Debtor's equipment is scheduled at an unknown current value.

11. The Debtor scheduled secured claims of $937,550.91, priority unsecured claims of $299,667.69 (principally federal and state taxes) and general unsecured claims of $1,092,005.69.

12. The creditors that assert liens on the Debtor's personal property are:

(a) the U.S. Small Business Administration, under a $127,500 Economic Injury Disaster Loan made on August 27, 2020, scheduled at $125,172.86;

(b) the Laborers' Pension Fund, which filed a financing statement in February 2024 and holds a judgment on an installment note, scheduled at $209,505.31;

(c) Fora Financial Asset Securitization 2021 LLC, under a business loan made in February 2024, scheduled at $228,010.00;

(d) AJ Trucking, LLC, under a $200,000 note and security agreement dated April 3, 2024;

(e) Mid Central Operating Engineers Health and Welfare Fund, which asserts a citation lien, scheduled at $31,212.55 and disputed;

(f) Caterpillar Financial Services Corporation, which financed the AP1055 paver and the CB24B compactor, scheduled at $77,577.48 and $44,615.70; and

(g) Altorfer Industries, Inc., which claims an interest in the 2014 Caterpillar 262D skid steer, scheduled at $21,457.00 and disputed.

13. The Debtor is filing an adversary proceeding to determine the validity, priority and extent of those liens.

**Events Leading to the Chapter 11 Filing**

14. As the Debtor's work declined, it fell behind on its obligations to its lenders, its suppliers and the union fringe benefit funds. By the Petition Date, several creditors had obtained judgments or were pursuing collection against the Debtor and, in several cases, against me as guarantor:

(a) Fora Financial Asset Securitization 2021 LLC obtained a judgment against the Debtor in the Circuit Court of Cook County, No. 25 L 3414;

(b) the Laborers' Pension Fund obtained a judgment of $193,429.70 on an installment note;

(c) the Midwest Operating Engineers fringe benefit funds obtained a judgment in the Northern District of Illinois in June 2025 and have said they will reschedule a citation to discover assets;

(d) Mid Central Operating Engineers Health and Welfare Fund obtained a judgment in the Central District of Illinois on February 6, 2026, and a citation to discover assets was issued on May 19, 2026;

(e) Builders Asphalt, LLC and Altorfer Industries, Inc. have collection suits pending in the Circuit Court of Cook County; and

(f) on November 9, 2026, Caterpillar Financial Services Corporation obtained a default judgment of $122,193.18 in the Circuit Court of Cook County, No. 2025L050367, and a finding that its rights in the AP1055 paver and the CB24B compactor are superior to the Debtor's.

15. Without the protection of this case, those creditors would have continued to pursue the Debtor's receivables, bank accounts and equipment, and the Debtor could not have completed and collected its work. The Debtor filed this case to stop those collection efforts, preserve its receivables and equipment, and propose a plan under Subchapter V that pays its creditors from continued operations.

Tyro expects to successfully reorganize by securing new contracts and generating revenue from ongoing and anticipated projects. The company intends to improve profitability and cash flow through stricter cost controls, improved labor and equipment utilization, and more disciplined project management, allowing it to meet its restructured financial obligations while maintaining sustainable operations.

**Use of Cash Collateral**

16. The Debtor's cash on the Petition Date consisted of nominal balances in its bank accounts, approximately $2,294 in total. Its operations will be funded by

collecting its accounts receivable, principally the $404,266.67 owed by Abbey Construction, Inc., and by new work.

17. I understand that the U.S. Small Business Administration asserts a first-priority lien on the Debtor's receivables and their proceeds, and that other creditors assert junior liens. The receivables and the cash they produce are therefore cash collateral.

18. The Debtor's next payroll is due Friday, November 20, 2026, and payroll falls due every Friday after that. The Debtor's only source of funds to meet its payroll is collections on its receivables. If the Debtor cannot use those funds this week, it will miss its payroll, its crews will leave their jobs, and Debtor will be unable to complete the work that produces its receivables. That harm could not be undone by relief granted later.

19. The Debtor cannot operate without using cash collateral. It needs those funds to pay for, among other things, labor and union contributions on its current work, materials and fuel, maintenance of equipment, rent for its equipment yard and office, and insurance, as well as to pay the costs of this case. If the Debtor cannot use cash collateral, it will be unable to complete its work, its receivables will be at risk, and its equipment and business will lose value, to the harm of all parties.

20. The Budget attached to the cash collateral motion as Exhibit C was prepared by me or under my direction from the Debtor's books and records. It shows the Debtor's expected receipts and the expenses it must pay during the Budget period, including the $622 monthly payment to the SBA and the $4,000 monthly

payment to the Debtor's counsel, subject to Court approval. I believe the Budget is reasonable and that the Debtor can operate within it.

21. The Debtor will keep insurance on its equipment and other property in force, including its workers' compensation and umbrella coverage, and will provide the reports required by any order authorizing the use of cash collateral.

## Bank Accounts

22. On the Petition Date, the Debtor maintained a checking account at Huntington National Bank ending 0865, a checking account at PNC Bank, N.A. ending 3716, and a savings account at Huntington National Bank ending 9666. It also has a Bank of America checking account ending 4925, which was overdrawn by $21,754.58 and is not in use.

23. The Debtor intends to use the Huntington checking account as its debtor in possession operating account and to deposit its receivables into it. Debtor plans to close the PNC checking account, the Huntington savings account, and the Bank of America account.

24. Before the Petition Date, the Debtor authorized automatic ACH debits in favor of Fora Business Loans LLC. Unless the bank is directed not to honor prepetition debit authorizations, funds the Debtor needs to operate could be taken from its accounts on account of prepetition debts.

25. The Debtor will report all activity in its account in its monthly operating reports and will mark new checks with the legend "Debtor in Possession" and the case number.

26. I have reviewed the First Day Motions. The facts they state are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2026, at Chicago, Illinois.

/s/ Tracy Perkins

Tracy Perkins
President, Tyro Construction Inc.